UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOM LEWIS, No. 133200,

    Plaintiff,

v.

    Case No. 2:21-cv-11939
    Hon. Nancy G. Edmunds

UNKNOWN GREASON, ET AL,

    Defendants.
_____/

**OPINION AND ORDER PARTIALLLY DISMISSING CASE AND DENYING PLAINTIFF'S MOTION FOR JOINDER**

This is a pro se prisoner civil rights case filed under 42 U.S.C. § 1983. Tom Lewis is currently incarcerated at the Ionia Maximum Correctional Facility. Lewis sues nineteen Defendants located at three different prisons. Defendants (1) Greason, (2) Jenkins-Grant, (3) Unknown Transfer Coordinator, (4) Ramsey, (5) Unknown Legal Advisor, and (6) Luzius are all stationed at the Macomb Correctional Facility. Defendants (7) Rewerts, (8) Beecher, (9) Tomsen, and (10) Unknown Maintenance Worker are all employed at the Carson City Correctional Facility. Defendants (11) Macauley, (12) Hadden, (13) Klien, (14) Delnay, (15) Smith, (16) Felver, and (17) Unknown Mailroom Clerk are all located at the Bellamy Creek Correctional Facility. Finally, Defendants (18) Wallace and (19) Russell work at an unknown location for the Michigan Department of Corrections.

As detailed below, the Court will summarily dismiss Defendants 7-16 from the complaint because they were improperly joined. The claims against these Defendants are not sufficiently related to the claims against the six lead Defendants to permit all the claims to be raised in the same action. The Court will summarily dismiss Defendants 17-19 for Lewis' failure to state a

1

claim against them. The case will proceed with respect to Defendants 1-6, on Lewis' access-to-the-courts and retaliation claims.

## I. Standard of Review

The case is before the Court for screening under the PLRA. Lewis has been granted leave to proceed without prepayment of the filing fee for this action due to his indigence. Under the PLRA, the Court is required to sua sponte dismiss an in forma pauperis complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). Similarly, the court is required to dismiss a complaint seeking redress against government entities, officers, and employees that it finds to be frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b). A complaint is frivolous if it lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Pro se complaints are held to "less stringent standards" than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). While a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

To establish a prima facie case under § 1983, "a plaintiff must allege that []he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law." *Paige v. Coyner*, 614 F.3d 273, 278 (6th Cir. 2010) (emphasis omitted). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, [the claim] must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

## II. Complaint

Lewis' complaint is divided into eight claims that cover events occurring at three correctional facilities. Lewis' first three claims were pled in reverse chronological order, and so the Court reorders them here.

In Claim 3, Lewis asserts that in August 2019, Defendant Luzius, the law librarian at the Macomb Correctional Facility ("Macomb"), wrongfully sanctioned him with the loss of 60-days law library time in an effort to defeat a case that he filed in the Western District of Michigan, *Lewis v. Dercher*, Western District of Michigan Case No. 1:18-cv-1093.[1] (Complaint, ECF No. 1, ¶ 13, PageID.20.) The sanction forced Lewis to use an incorrect form and prevented him from developing his legal arguments, and he asserts that but for the interference he would have overcome an exhaustion of administrative remedies defense. (Id., ¶ 14-17.)

In Claim 2, Lewis asserts that in September and October 2019, Defendant Ramsey, the mailroom supervisor at Macomb, opened and read his outgoing legal mail related to the other case. (Id., ¶ 4.) Lewis asserts that Ramsey then altered the pleadings in a manner that resulting in his

---

[1] This prior case raised allegations regarding prison conditions at the Muskegon Correctional Facility.

case being dismissed. (Id., ¶ 5-11.) Lewis asserts that Ramsey was acting in conspiracy with Defendant Unknown Legal Advisor. (Id., ¶ 12.)

In Claim 1, Lewis asserts that on October 29, 2019, after he filed grievances regarding the above conduct, Defendant Greason, the acting deputy warden at Macomb, transferred Lewis to a correctional facility in Adrian.[2] (Id., ¶ 1.) Lewis claims that the transfer was performed in retaliation for his grievances, and the facility was chosen because it did not offer kosher food, a requirement of his religious practices. (Id.) Lewis further claims that Defendant Jenkins-Grant, the unit manager at Macomb, initiated the transfer knowing it was being ordered in retaliation. (Id., ¶ 2.) He further alleges that Defendant Unknown Transfer Coordinator acted in conspiracy with Greason and Jenkins-Grant to facilitate the transfer. (Id., ¶ 3.)

The next two claims arose at the Carson City Correctional Facility. In Claim 4, Lewis asserts that Defendant Warden Rewerts held him in the segregation unit at Carson City from February 9, 2020, until December 23, 2020. (Id., ¶ 18.) He asserts that the heating system in the unit failed, and that prisoners were forced to live in frigid conditions. (Ibid.) Lewis filed a grievance. He asserts that in retaliation for the grievance, he was placed on unspecified restrictions, and then he was transferred to another facility. (Id., ¶ 18-20.) Lewis further asserts that Defendant Beecher, the segregation unit manager, and Defendant Unknown Maintenance Worker, failed to take any actions to improve the living conditions. (Id. ¶ 21-22.)

---

[2]Though the complaint does not state the facility's name, Adrian is home to the Gus Harrison Correctional Facility. Giving Lewis the maximum benefit of the doubt, the Court will assume the reference to Adrian is a mistake, and that this paragraph in the complaint is meant to refer to the Carson City Correctional Facility as the transfer location. If Lewis is in fact claiming that he was first transferred to Adrian and not to Carson City, then the misjoinder discussed below is even more pronounced as the asserted connection between the incidents at Macomb, Carson City, and Bellamy Creek would be even more tenuous.

In Claim 5, Lewis asserts that Defendant Beecher falsely sanctioned him $164 for the cost of replacing a window in his cell. He asserts that Beecher withheld evidence and manufactured false evidence to support the sanction. (Id., ¶ 23.) Likewise, he asserts that Defendant Thomsen, a corrections officer, falsely accused him of damaging the window. Lewis claims that Thomsen fabricated the charge in retaliation for Lewis rejecting Thomsen's sexual advances. (Id., ¶ 24.)

Claims 6 and 7 arose at the Bellamy Creek Correctional Facility, from late December 2020 until June 2021. In Claim 6, Lewis asserts that Defendant Warden Macauley allowed the kitchen to serve food to segregation prisoners on garbage-coated food trays. (Id., ¶ 25-26.) He asserts that Defendant Hadden, the segregation unit manager, allowed the unsanitary practice to continue. (Id., ¶ 27.) He asserts that Defendants Klein, the food service director at Bellamy Creek, and Defendant Delnay, his assistant, were responsible for allowing the unsanitary trays to be used. (Id., ¶ 28-29.) Lewis also claims two guards who delivered food to him, Defendants Felver and Smith, are responsible for the practice. (Id., ¶ 30-31.)

In Claim 7, Lewis asserts that from March 2021 to May 2021, Defendant Macauley denied him kosher food, causing him to go on a hunger strike. (Id., ¶ 32-33.)

Finally, in Claim 8, Lewis asserts that on April 22, 2021, Defendants Russell and Wallace, who work for the MDOC legal department, and Defendant Unknown Mailroom Clerk at Carson City, conspired to ensure that a motion for reconsideration of the order denying his petition for writ of certiorari was filed untimely in the United States Supreme Court. (Id., ¶ 34.) Lewis claims his reconsideration motion was meritorious and that he would have prevailed. (Id., ¶ 35-40.)

Along with the complaint, Lewis filed a motion for joinder seeking permission to join all of his claims against the multiple sets of defendants. (ECF No. 3.)

### III. Misjoinder

Lewis sues nineteen Defendants at three different prisons for a range of events spanning over a two-year time period. Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, and Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Where a complaint names multiple defendants, a court first looks to Rule 20 to determine whether the joinder of defendants was proper:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), quoted in *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009).

Accordingly, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise

6

from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id*. (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 U.S. Dist. LEXIS 92547, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Here, Lewis' claims against the six lead Defendants arise from sufficiently related transactions to permit joinder. This first set of allegations concern events at the Macomb facility from August to October 2019. Lewis asserts that Defendants Luzius and Ramsey, at the direction of an unknown legal advisor, took actions in the law library and mailroom to hamper his efforts in his previous lawsuit. When he filed grievances regarding the conduct, he asserts that Defendants Greason, Jenkins-Grant, and Unknown Transfer Coordinator transferred him in retaliation to a prison they knew did not provide kosher food. The claims regarding these six Defendants relate to the same set of facts occurring during same time period, and they took place at the same institution. They therefore meet the transactional relatedness requirement of Rule 20, and joinder of these six Defendants is proper.

The same cannot be said for the remaining Defendants. The claims against the second set of Defendants relate to conditions at the segregation unit at Carson City, and an unrelated claim that Lewis was falsely charged with vandalizing his cell window after he rebuffed a guard's sexual advances. These events are alleged to have occurred from February to December 2020. Lewis asserts that the claims are related to the first set because his transfer was performed in retaliation for his grievances. While it is true the transfer itself was the alleged result of his first set of claims, the complained of acts alleged to have occurred at Carson City are not related in anyway to the

complained of acts at Macomb. The alleged frigid conditions on the segregation unit and the incident with the vandalized window are not alleged to have had anything to do with what is alleged to have happened at Macomb. For example, Lewis is *not* claiming that Greason transferred him to Carson City because he knew or directed that Lewis be kept in a frigid cell. Because the claims against the Carson City Defendants involve a different time period, unrelated acts, unrelated Defendants, and different facilities, the Carson City Defendants were improperly joined.

The same holds true for the Bellamy Creek Defendants. The acts giving rise to the claims there took place from December 2020 to June 2021. They concern unsanitary food service and the unavailability of kosher food. Moreover, the transfer to Bellamy Creek was one more step removed from Macomb than the transfer to Carson City – what is alleged to have occurred at Bellamy Creek had nothing at all to do with what is alleged to have occurred at Macomb. The Bellamy Creek Defendants were therefore also improperly joined.

Finally, Lewis' Claim 8 concerns the filing of a motion for reconsideration of the order denying his petition for writ of certiorari in the Supreme Court. Lewis claims that Defendants Wallace, Russell, and Unknown Mailroom Clerk conspired to ensure that the motion was not filed until after the deadline passed. This claim presents a closer question because it relates more directly to Lewis' central allegation in his Claims 1 and 2 that MDOC officials attempted to prevent him from obtaining relief in his prior case. On the other hand, the alleged acts occurred over two years after the Macomb acts, and they occurred at a different facility. For the reasons stated below, even assuming these parties were properly joined, the complaint will be dismissed with respect to them.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id*. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may

8

be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'")(quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)).

Because the various Defendants that were misjoined are employed at Michigan prisons located in the Western District of Michigan, because the facts pertaining to those Defendants occurred in that district, and because the three-year statute of limitations does not pose a concern, the Court concludes that the Carson City and Bellamy Creek Defendants should be dropped and the claims against them dismissed without prejudice. Lewis is free to file a separate complaint, or complaints, in the Western District of Michigan naming those Defendants, if warranted by the facts and the law.

### IV. Failure to State a Claim

For purposes of screening the complaint under the PLRA, the case will be allowed to proceed on Lewis' retaliation and access-to-the-courts claims against Defendants (1) Greason, (2) Jenkins-Grant, (3) Unknown Transfer Coordinator, (4) Ramsey, (5) Unknown Legal Advisor, and (6) Luzius. The complaint will be dismissed with respect to Defendants (17) Unknown Mailroom Clerk, (18) Wallace, and (19) Russell for Lewis' failure to a claim against them.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Prison officials are prohibited from erecting barriers that impede this right. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992). An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). An inmate must plead and demonstrate that

prison officials hindered his efforts to pursue a nonfrivolous legal claim. *Lewis,* 518 U.S. at 351-53; *see also Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).

Lewis' prior action challenged prison conditions at the Muskegon Correctional Facility. The case was dismissed because Lewis failed to exhaust his administrative remedies. Though the pro se complaint leaves room for interpretation, it seems Lewis claims that Defendants Ramsey and Unknown Legal Advisor altered his pleadings in that case to undermine his claim that he in fact exhausted his claims. He further claims that Defendant Luzius denied his access to the law library in order to prevent him from using the correct forms and to develop arguments to respond to the lack-of-exhaustion defense. Lewis claims that he had proof that he exhausted his administrative claims, but these Defendants prevented him from properly submitting that proof. For screening purposes, Lewis asserts facts sufficient to allow the case to proceed on his access-to-the-courts claims against these Defendants.

Next, "a retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Lewis asserts that in retaliation for the grievances he filed related to his access-to-the-court claim, Defendants Greason, Jenkins-Grant, and Unknown Transfer Coordinator transferred him to a diffident facility that did not have kosher food. For screening purposes, these allegations state facts sufficient to state all three elements of a retaliation claim against these Defendants.

Finally, with respect to Defendants Unknown Mailroom Clerk, Wallace, and Russell, the complaint fails to state an access-to-the-courts claim. As indicated, Lewis' prior actions was

dismissed on exhaustion grounds. He appealed, and the Sixth Circuit affirmed. *Lewis v. Decker*, No. 19-2162 (6th Cir. July 14, 2020). Lewis filed a petition for writ of certiorari, but it too was denied. *Lewis v. Decker*, No. 20-5817 (Dec. 7, 2020). The claim is that these three Defendants conspired to delay the filing of Lewis' motion for reconsideration of the denial of certiorari. Stemming from an exhaustion dismissal of a prisoner civil rights action, however, the odds of such a motion being granted were de minimis. Lewis does not plead facts showing that these Defendants hampered his efforts to pursue a nonfrivolous legal claim. The Supreme Court is not an error-correction court, and Lewis does not explain what extraordinary feature of his case merited the Supreme Court's attention. *See Shehee v. Grimes*, 39 F. App'x 127 (6th Cir. 2002) (Plaintiff did not suffer injury where underlying petition for certiorari was frivolous); *see also Fawley v. Geo Group, Inc.*, 2013 U.S. Dist. LEXIS 168306, *75 (D.N.M. Mar. 18, 2013) (Plaintiff not denied meaningful access to court where petitions for certiorari are "rarely" granted based on asserted misapplication of a properly stated rule of law). The complaint will be summarily dismissed with respect to these three Defendants for Lewis' failure to state a claim.

### IV. Conclusion

Accordingly, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), 42 U.S.C. § 1997e(c), and Rule 21, the Court will dismiss Defendants (7) Rewerts, (8) Beecher, (9) Tomsen, (10) Unknown Maintenance Worker, (11) Macauley, (12) Hadden, (13) Klien, (14) Delnay, (15) Smith, and (16) Felver because they were improperly joined.

The Court will dismiss Defendants (17) Unknown Mailroom Clerk, (18) Wallace, and (19) Russell for Lewis' failure to a claim against them.

The case will proceed with respect to Defendants (1) Greason, (2) Jenkins-Grant, (3) Unknown Transfer Coordinator, (4) Ramsey, (5) Unknown Legal Advisor, and (6) Luzius on Lewis' access-to-the-courts and retaliation claims.

Finally, Lewis' motion for joinder is denied.

**SO ORDERED**.

s/ Nancy G. . Edmunds  
Nancy G. Edmunds  
United States District Court

Dated:  October 7, 2021