UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOM LEWIS,

      Plaintiff,

v.

      Case No. 2:21-cv-11939
      District Judge Nancy G. Edmunds
      Magistrate Judge Kimberly G. Altman

ALAN GREASON, REGINA JENKINS-
GRANT, CHRISTINA RAMSEY,
JEFFREY LUZIUS, MELODY WALLACE,
RICHARD RUSSELL, FNU CAMPBELL,
UNKNOWN MAILROOM PERSONNEL,
and UNKNOWN TRANSFER COORDINATOR,

      Defendants.

_____/

**REPORT AND RECOMMENDATION
TO DENY PLAINTIFF'S MOTION TO STRIKE (ECF No. 108)
AND GRANT DEFENDANTS'
DISPOSITIVE MOTIONS (ECF Nos. 33, 74)**

I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Tom

Lewis, proceeding *pro se*, filed a complaint against nineteen defendants located at

three different correctional facilities. (ECF No. 1). Following entry of an order of

partial dismissal, only Lewis' access-to-the-courts and retaliation claim against the

above-named defendants remained. *See* ECF No. 7. Defendant Jeffery Luzius

1

(Luzius) then moved for summary judgment on the basis of exhaustion. (ECF No. 33). Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 21). Lewis has since filed an amended complaint against defendants Campbell, Alan Greason (Greason), Regina Jenkins-Grant (Jenkins-Grant), Luzius, Christina Ramsey (Ramsey), Richard Russell (Russell), Melody Wallace (Wallace), and unknown transfer coordinator and mailroom personnel, (ECF No. 16), which was accepted by the Court as the operative complaint, (ECF No. 78), upon a motion to reconsider, (ECF No. 54). Defendants Campbell, Russell, and Wallace have moved to dismiss the amended complaint for failure to state a claim, and in the alternative, for summary judgment on the basis of exhaustion. (ECF No. 74).

These pending dispositive motions are now before the Court, as is Lewis's motion to strike these motions, (ECF No. 108).[1] For the reasons stated below, it is RECOMMENED that Lewis's motion to strike (ECF No. 108) be DENIED. It is also RECOMMENDED that Defendants' dispositive motions (ECF Nos. 33, 74) be GRANTED, and that Lewis's claims against Luzius, Campbell, Russell, and Wallace be dismissed. If this recommendation is adopted, Lewis's claims would

---

[1] Also pending are Lewis's motions to inform the Court of progress in responding to the dispositive motions, (ECF No. 102), various premature discovery motions, (ECF Nos. 97, 103, 105, 106, 109, 110), a motion for handicap accommodations (ECF No. 104), and a renewed motion for appointment of counsel, (ECF No. 107), all of which will be the subject of a separate order.

proceed against the following Defendants: Alan Greason, Regina Jenkins-Grant, Unknown Mailroom Personnel, and Unknown Transfer Coordinator (identified by Defendants as Jennifer Torres, ECF No. 74, PageID.951).

## II.    Background

### A.    Procedural History

Lewis filed his original complaint on August 6, 2021 against nineteen defendants at three separate locations.  (ECF No. 1).  Upon screening the complaint on October 4, 2021, the district court dismissed 10 defendants without prejudice due to improper joinder and three defendants for failure to state a claim, allowing the case to proceed against the six defendants in the case caption on access-to-the-courts and retaliation claims.  (ECF No. 7, PageID.117-118).  The case was then stayed on October 13, 2021 and referred to the *pro se* prisoner early mediation program.  (ECF No. 8).  No settlement was reached, and on February 1, 2022, the stay was lifted.  (ECF No. 13).  The following day, Lewis filed an amended complaint in an apparent attempt to clarify his claims against the six remaining defendants as well as restate claims against Wallace, Russell, and Unknown Mailroom Personnel.  (ECF Nos. 16, 17).  On June 1, 2022, Luzius filed

a motion for summary judgment on the basis of exhaustion, based on the claims in the original complaint.[2]

On June 27, 2022, Lewis filed a motion to reconsider, asking that the Court recognize his amended complaint (ECF No. 16) as operative.  (ECF No. 54). Defendants responded, arguing that the amended complaint failed to state a claim or overcome administrative exhaustion requirements and would thus be futile. (ECF No. 67).  Campbell, Russell, and Wallace later filed the motion to dismiss and for summary judgment, (ECF No. 74), that is currently before the Court.  On August 24, 2022, the undersigned issued a memorandum and order to recognize the amended complaint, (ECF No. 16), as operative, and withheld judgment on the substantive issues raised by Defendants regarding that complaint.  (ECF No. 78).

Initially, Lewis was ordered to respond to Luzius's motion for summary judgment by July 8, 2022.  (ECF No. 35).  The Court also ordered Lewis to respond to Campbell, Russell, and Wallace's motion by September 19, 2022.

---

[2] While generally an amended complaint supersedes the original complaint and renders dispositive motions regarding the original complaint moot, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."  *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 919 (E.D. Mich. 2022) (quoting *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002) (citations omitted in original)).  Because Luzius's "failure to exhaust" argument applies equally to the allegations of the amended complaint, the undersigned will consider that motion rather than require Luzius to file a new, largely identical motion.

4

(ECF No. 75).  Lewis failed to meet these deadlines, but moved for appointment of counsel on September 1, 2022.  (ECF No. 82).  The Court conditionally granted this motion and stayed proceedings for 60 days and referred the case to the Court's *pro bono* program to attempt to obtain counsel for Lewis.  (ECF No. 87).

The Court was unable to obtain counsel for Lewis.  Thus, on November 21, 2022, the stay was lifted.  (ECF No. 94).  Lewis was given until December 27, 2022, to file responses to the pending dispositive motions.  (*Id*.).  Within this timeframe, Lewis moved to stay proceedings for an additional 90 days, pending his transfer to another facility that would allow him "adequate preparation and presentation in defense" of his claims.  (ECF No. 95).  The Court denied this request for relief, but granted Lewis a final extension of time to respond, making responses due by January 23, 2023.  (ECF No. 96).

On January 24, 2023, Lewis filed eight motions,  (ECF Nos. 102-109), but no responses to Defendants' motions.  On January 30, 2023, Lewis filed another discovery motion as well as a response to Luzius's motion for summary judgment.  (ECF Nos. 110, 111).  On February 1, 2023, he filed a response to Campbell, Russell, and Wallace's motion.  (ECF No. 112).  Although the responses are untimely, the undersigned will consider them in analyzing Defendants' motions.

B.    Factual Allegations

5

In the amended complaint, Lewis claims that he suffered a retaliatory transfer from Macomb Correctional Facility (MRF) to Gus Harrison Correctional Facility (ARF), where Kosher meals were unavailable. (ECF No. 16, PageID.173). He also claims that he was unlawfully denied access to the law library by Luzius and Wallace, and that Ramsey, Campbell, and Wallace conspired to open his legal mail and sabotage his ongoing lawsuit at that time, *Lewis v. Decker*, Case No. 1:18-cv-1093 (W.D. Mich.), resulting in dismissal of that matter. (*Id*.). Lastly, he claims that unknown mailroom personnel at Carson City Correctional Facility (DRF) withheld his legal mail in conspiracy with Wallace, causing him to miss a court deadline. (*Id*.).

Regarding the motions currently before the Court, Lewis alleges in "Claim II"[3] that "Defendants Ramsey and Campbell conspired with Wallace and Russell and Luzius to deny me access to the courts . . . by violating my incoming and outgoing legal mail." (*Id*., PageID.179, citing PageID.189-191 (Lewis's affidavit in support of the complaint)). He alleges specifically that Luzius added fraudulent law library inventory sheets to Lewis's pleadings in order to undercut a motion that Lewis made for more access to the law library. (*Id*., PageID.179).

---

[3] Claim I sets forth Lewis's claim of retaliatory transfer by Greason, Jenkins-Grant, and a transfer coordinator that Defendants identify as Jennifer Torres. This claim is not currently before the Court, as these Defendants have yet to challenge the complaint.

6

In Claim III, Lewis claims that "Defendant Luzius[,] in conspiracy with Wallace and Russell, conspired to deny me access to the courts . . . when they denied me law library [access] illegally for 60 days[.]" (*Id.*, PageID.180). This is the penalty from Lewis's misconduct ticket for disturbing the peace, to which it appears he pled guilty, and where he was found not guilty of a second charge of disobeying a direct order. (*See generally* ECF No. 33 and attached exhibits). He appealed from the hearing solely because his law library access was revoked for 60 days, and he thought it should only have been 30 based on dismissal of one of the two charges. (*Id.*). Lewis contends that by denying him rightful access to the law library, Lewis was unable to discover in a timely fashion that some of his exhibits in *Lewis v. Decker* were self-authenticating under Federal Rule of Evidence 902, preventing him from offering evidence that he had exhausted administrative remedies in that case. (ECF No. 16, PageID.181-182).

In Claim IV, Lewis alleges that Wallace, Russell, and unknown mailroom personnel at DRF did not mail his petition for rehearing before the Sixth Circuit for three months, thereby resulting in denial of the petition for being untimely. (*Id.*, PageID.182-184).

### III.    Standards of Review

#### A.    Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Lewis is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage,

8

as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## B.     Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v.*

9

*Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

## IV.   Analysis

### A.   Lewis's Motion to Strike Defendants' Motions

Lewis has moved to strike Luzius's motion for summary judgment and Campbell, Russell, and Wallace's motion to dismiss or for summary judgment (ECF No. 108). Each motion is addressed in turn below and, as explained, it is RECOMMENDED that the motion to strike be DENIED.

### 1.   Luzius's Motion

As to Luzius, Lewis contends that documents attached to Luzius's motion for summary judgment constitute a fraud upon the Court, so his motion should be

stricken.  Lewis states that his grievance, MRF-19-10-1453-28E (MRF-1453) was decided on the merits, and that defense counsel deceives the Court by representing that the grievance was rejected for procedural issues.  The difference is not without consequence; as will be discussed below, a grievance denial on the merits constitutes exhaustion of the remedies available, whereas a properly rejected grievance does not exhaust the claims therein.

Luzius's motion states that MRF-1453 was "rejected" at Step III, as it "(did not include Step II response in Step III submission)."  (ECF No. 33, PageID.339).  In the grievance report attached to the motion, and sworn to be a true and accurate copy of Lewis's report by Michigan Department of Corrections (MDOC) staff, the box for "Rejected" is checked and the box for "Denied" is unchecked regarding MRF-1453.  (ECF No. 33-3, PageID.370).  That form does not state the reason for rejection, nor does the Step III grievance decision itself, which states that "the rejection is upheld."  (ECF No. 33-3, PageID.420).  The Step II response to this grievance is not included in the filings by Defendants or Lewis.

Lewis attaches to his motion an example of another grievance that was rejected at Step III for a "[m]issing Step II response."  (ECF No. 108, PageID.1247).  He contends that if MRF-1453 were similarly rejected, this form would be in his grievance report for that grievance, which it is not.

Considering the above, Lewis has not affirmatively shown that there has

11

been a fraud upon the court.  In general, where false documents are put before the court, fraud is only found when one of the perpetrators of the fraud can be shown to be the attorney putting forth the document.  *See Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993).  Given that the grievance report is created by the MDOC, and that an MDOC departmental analyst swore to its truth and accuracy, if this document was fraudulent, there is no indication that defense counsel was involved. Furthermore, as Lewis himself points out, the Step III decision for MRF-1453 states that it was "rejected" and that the rejection was upheld.  (ECF No. 33-3, PageID.420).  Thus, it makes sense that the grievance report would show a checkmark under Rejected and not under Denied.  Courts in this district have likewise found that slight discrepancies in grievance report documents do not constitute fraud.  *See Threatt v. Williams*, No. 15-12585, 2016 WL 4607639, at *2 (E.D. Mich. Sept. 6, 2016); *Mathis v. Sudhir*, No. 1:13-CV-187, 2014 WL 905823, at *10 (W.D. Mich. Mar. 5, 2014).

That said, the Court's analysis of the grievance must consider whether it was *properly* rejected before finding Lewis's administrative remedies unexhausted. *Merrill v. King*, No. 2:22-CV-10541, 2022 WL 18402555, at *4 (E.D. Mich. Dec. 21, 2022), *report and recommendation adopted*, 2023 WL 361997 (E.D. Mich. Jan. 23, 2023).  "[T]he Court is not required to blindly accept the state's application of the procedural rule."  *Reeves v. Salisbury*, 2012 WL 3206399, at *5.  Exhaustion

12

of administrative remedies means "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006); *see also Williams v. Winn*, No. 18-11060, 2019 WL 2252012 at \*6 (E.D. Mich. Feb. 27, 2019) ("The rejection of a grievance is not, however, the end of the analysis.  It is appropriate for the Court to review the prison official's administration of the state grievance procedure."), *report and recommendation adopted*, 2019 WL 1417166 (E.D. Mich. Mar. 29, 2019).

As will be discussed below, Lewis's remedies against Luzius were unexhausted.  However, this finding is not based on the fact that MRF-1453 was rejected as opposed to denied.  Thus, Lewis is not harmed by any discrepancy.

### 2.    Campbell, Russell, and Wallace's Motion

In moving to strike Campbell, Russell, and Wallace's motion to dismiss or in the alternative, for summary judgment, Lewis relies on Federal Rules of Civil Procedure 12(g)(2) and 12(h).  Rule 12(g)(2) states in relevant part that, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Rule 12(h) states that certain defenses under Rule 12 are waived when not made in a prior motion.

Lewis contends that because defense counsel has already filed one dispositive motion, (ECF No. 33), he is barred from bringing a second dispositive

motion, (ECF No. 74), on grounds that could have been raised in the first.  This argument fails for two reasons.  First, Luzius has brought a motion under Rule 56, not Rule 12.  Nowhere in the Federal Rules of Civil Procedure is an argument or defense waived when it is not brought in a motion for summary judgment under Rule 56.  The only similar guidance regarding Rule 56 is Eastern District of Michigan Local Rule 7.1(b)(2), which states that "[a] party must obtain leave of court to file more than one motion for summary judgment."  Second, defense counsel was not required to request leave to file a second motion for summary judgment, because this rule (as well as Rules 12(g) and 12(h)) applies to *parties*, not attorneys.

In short, the first motion before the Court was brought on behalf of one defendant, Luzius; the second motion was brought on behalf of three other defendants, Campbell, Russell, and Wallace.  Because these are the first dispositive motions brought by each of the parties, there is no violation of federal or local rule.

B. Exhaustion of Administrative Remedies

1.  Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that

14

the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances.  "Under the [Michigan] Department of Corrections'

procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94.  To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ S (underlining omitted).

Furthermore, MDOC Policy Directive also 03.02.130 sets forth time limits regarding the three-step grievance process.

Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution.  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022) (internal citations omitted).  "Step III grievances are 'generally' responded to within sixty (60) days."  *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

### 2.  Lewis's Grievances

Below are the grievances that Lewis has submitted through Step III that are relevant to his claims in this case:

#### MRF-19-09-1268-15b (MRF-1268)

Grievance MRF-1268 states that on August 26, 2019, Lewis received legal

mail that had been opened and resealed with a piece of tape, in support of his claim that his legal mail had been tampered with by unknown mailroom staff.  (ECF No. 33-3, PageID.428).  MDOC responded that his mail arrived at the facility in that condition and that mailroom staff placed the tape on the envelope to prevent documents from falling out before delivery to Lewis.  (*Id.*, PageID.427).  This grievance was denied at Step III as the "issue was considered, investigated, and a proper decision was rendered."  (*Id.*, PageID.425).

<u>MRF-19-10-1453-28e (MRF-1453)</u>

MRF-1453 states that on October 14, 2019, Luzius, the facility librarian, wrongfully denied Lewis access to the library without authority to do so.  (ECF No. 33-3, PageID.424).  At Step I, MDOC responded that the decision to ban Lewis from the library stemmed from a misconduct ticket for creating a disturbance, and that the decision was made by the hearing officer, not Luzius. (*Id.*, PageID.422).  MDOC stated that Luzius was within his rights as the librarian to enforce the ban.  (*Id.*).  As noted above, the grievance records contain no Step II response, and the grievance was rejected at Step III, possibly for Lewis failing to attach the Step II response to his Step III appeal, although the documents do not reflect this.

<u>MRF-19-10-1476-28e (MRF-1476)</u>

MRF-1476 states that on October 15, 2019, Lewis was denied legal supplies,

such as envelopes, paper, and pens that he could use despite his disability.  (ECF No. 33-3, PageID.413).  At Step I, the MDOC responded that supplies were not withheld, that Lewis had access to the legal writer program if additional supplies were needed, and that MDOC was no longer required to provide additional envelopes to inmates free of charge.  (*Id*., PageID.415).  Like MRF-1453, MRF-1476 was rejected at Step III, perhaps due to missing documentation from Lewis in appealing the Step II findings, but this was not documented.

MRF-19-10-1477-28a (MRF-1477)

MRF-1477 grieved a rejected request for extra time and access to the law library on October 15, 2019 due to Lewis's impending court deadline.  (ECF No. 33-3, PageID.410).  It was rejected as duplicative of MRF-1453, (*Id*., PageID.409), which was upheld at Step III, (*Id*., PageID.406), over Lewis's contention that it was not duplicative because it related specifically to his court deadline, (*Id*., PageID.407).

MRF-19-10-1555-28b (MRF-1555)

MRF-1555 states that in retaliation for Lewis filing a kite[4] to complain about Luzius, Luzius wrote Lewis a misconduct ticket.  (ECF No. 33-3, PageID.401).

---

[4] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance.  *See, e.g., Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

The grievance was rejected as "vague/illegible/ or extraneous in form," which was upheld through Step III.  (*Id*., PageID.398-400).

MRF-19-11-1621-24z (MRF-1621)

MRF-1621 was Lewis's grievance regarding his transfer to ARF, a facility that did not provide Kosher meals to accommodate his religious diet, on October 19, 2019.  (ECF No. 33-3, PageID.386).  Lewis alleged that the transfer was retaliation for his other grievances and for filing suit in *Lewis v. Decker*.  (*Id*.).  At Step II, MDOC explained that he was transferred in order to separate him from other prisoners with whom he had been fighting, and that the issue was resolved by his subsequent transfer to DRF, which could accommodate his Kosher diet.  (*Id*., PageID.385).  The denial was upheld at Step III.  (*Id*., PageID.383).

MRF-19-11-1622-15b (MRF-1622)

Lastly, MRF-1622 states that on October 28, 2019, the legal department conspired with the mailroom to open and alter his legal mail in *Lewis v. Decker*. (ECF No. 33-3, PageID.391).  At Step I, MDOC responded that Lewis opened his own mail in the presence of control center staff, as inmates may do upon request, and did not indicate that anything was wrong with his mail at that time.  (ECF No. 33-3, PageID.392).  MDOC also denied that anything was added to or removed from Lewis's mail.  (*Id*.).  At Step II, Lewis named Ramsey, Russell, and Campbell as perpetrators of the act, but MDOC investigated and confirmed that

Lewis's allegations were without merit.  (*Id*., PageID.389-390).  At Step III, the

denial was upheld.  (*Id*., PageID.388).

### 3.  Exhaustion as to Luzius

Luzius accurately notes that Lewis filed four grievances against him.  Luzius

rests in part on the MDOC determinations of those grievances to argue

nonexhaustion.  As noted above, MRF-1555 was rejected for vagueness, and that

rejection was upheld through Step III.  MRF-1477 was rejected as duplicative of an

earlier grievance, MRF-1453.  "When a grievance is rejected as duplicative, the

court must look through that grievance to the prior grievance or grievances filed by

the prisoner."  *Snider v. Schmidt*, No. 2:19-CV-00134, 2020 WL 7049387, at *4

(W.D. Mich. Aug. 12, 2020), *report and recommendation adopted*, 2020 WL

6253699 (W.D. Mich. Oct. 23, 2020).  Though Lewis argued at Step II and III of

MRF-1477 that it was not duplicative, Lewis has not raised that issue in his

response, instead solely focusing on MRF-1453.  Luzius claims that MRF-1453

and MRF-1476 were properly rejected at Step III for Lewis's failure to include the

Step II response in his Step III application.  Lewis argues that the basis for these

rejections was improper, and that for MRF-1453 in particular, it was decided by

MDOC on the merits and therefore exhausts his claims therein.

At the onset, the Court finds that no applicable grievance regarding altering,

tampering with, or withholding Lewis's legal mail referenced Luzius, by name or

position, rending these claims as to him unexhausted.  The only remaining issues are the misconduct ticket that Lewis was issued and the temporary library ban resulting from the guilty finding at his misconduct hearing.

"When an inmate claims that he received a retaliatory misconduct ticket, he must exhaust the claim by raising the issue through the hearings and appeals process." *Bell v. Admin. Bd. of Claims*, No. 2:20-CV-10193, 2022 WL 17995670, at *4 (E.D. Mich. Sept. 13, 2022), *report and recommendation adopted,* No. 20-CV-10193, 2022 WL 17995537 (E.D. Mich. Dec. 28, 2022).  Decisions made in prisoner misconduct hearings are non-grievable, and where a prisoner asserts that he was given a ticket wrongfully or out of retaliation, he must raise this issue at the initial hearing and again upon application for rehearing or appeal in order to exhaust the claim.  *See, e.g., Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019) (citing *Siggers v. Campbell*, 652 F.3d 681, 693-694 (6th Cir. 2011)), *report and recommendation adopted,* No. 15-13826, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019).

Lewis was issued a misconduct ticket for his behavior in the library on August 26, 2019.  (ECF No. 33-4).  He was informed the next day that his access to the library was revoked pending his misconduct hearing, per MDOC policy directives.  (*Id.*).  He was also informed that if found guilty, he would be suspended for 60 days beginning August 28, 2019.  (*Id.*).  At his hearing on August

31, 2019, Lewis pled guilty to creating a disturbance, stating that he "was sorry for getting mad and yelling." (*Id*.).  He pled not guilty, and was found not guilty, of a second charge for disobeying a direct order.  (*Id*.).  Lewis appealed the decision solely on the basis that he believed he should have been sanctioned with 30 days loss of library privilege instead of 60, because he was only guilty of one of the two charges.  (*Id*.).  However, his appeal was denied and the decision upheld, as the Deputy Warden found that no due process violation had occurred.  (*Id*.).

Lewis failed to raise the issue that Luzius issued the misconduct ticket out of retaliation or wrongfully for the purpose of denying his access to the courts at the hearing; instead, he pled guilty to one of the charges, apologized for his conduct in the library, and asked only for a reduction in his sanction on appeal.  (*Id*.).  Luzius did not decide how long his library access would be revoked; this was decided by the hearing officer and upheld on appeal by the Deputy Warden.  Therefore, no cognizable action against Luzius is left unexhausted.

Lewis argues that under *Reed-Bey v. Pramstaller*, 603 F.3d at 325, MDOC waived this issue by failing to reject his grievances as non-grievable.  However, Lewis's grievances were not considered on the merits through all three steps, as is required for exhaustion.  *See Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013) ("For *Reed–Bey*'s holding to apply, Cook would have had to receive "merits-based responses *at each step*.") (emphasis in original).

MRF-1555, Lewis's grievance specifically referencing retaliation, was rejected as being vague, illegible, or extraneous in form, and the rejection was upheld through Step III.  (ECF No. 33, PageID.398-401).  As MDOC did not address the grievance by the merits, it was not required to reject the grievance for an additional reason to avoid waiver.  Lewis does not challenge the MDOC's finding that this grievance was too vague to adjudicate, but in any event, it cannot exhaust Lewis's claim regarding the misconduct ticket, because such claims can only be exhausted in the hearing and on application for rehearing or appeal.

As to the other grievances, MRF-1453 and MRF-1476 were rejected for disputed reasons, and MRF-1477 was rejected as duplicative, which is not in dispute.  Regardless of the propriety of these rejections, it is beyond doubt that MDOC did not address their merits through Step III.  This would be Lewis's only avenue for relief.  His case against Luzius rests on waiver of the defense that Lewis should have raised these claims at the misconduct hearing, which he did not.  By declining to address the merits of these grievances through Step III, MDOC has avoided waiver of this issue.

It should also be noted that MRF-1453 would not have exhausted cognizable claims against Luzius to begin with.  It is incontrovertible, based on the misconduct hearing report attached to Luzius's motion, (ECF No. 33-4), that the decision to sanction Lewis was made by the hearing officer, not Luzius.

24

For these reasons, the undersigned recommends that Lewis's claims against Luzius in the amended complaint be dismissed without prejudice for failure to exhaust administrative remedies.

### 4.   Exhaustion as to Campbell, Russell, and Wallace

Defendants Campbell, Russell, and Wallace argue that Lewis failed to exhaust any administrative remedies on any of the claims against them.  Regarding Russell and Wallace, they first argue that Lewis did not exhaust claims against them relating to *Lewis v. Decker* at the trial court stage.  Lewis claimed that Wallace and Russell "attempted to prevent a suit from being filed and had me locked up in the hole away from my property . . . and put my grievance 18-3-267 back in my property and then claimed I did not go to Step III and failed to exhaust remedies."  (ECF No. 16, PageID.177).  He also alleged that they contacted the mailroom at Richard A. Handlon Correctional Facility (MTU) and "had them withhold delivery of the Magistrate's case management order 16 days, so the Chapman Group could send me a discovery request for medical records."  (*Id.*).

Russell and Wallace contend that they were not named in any exhausted grievance regarding these claims.  However, Lewis notes that these allegations are under the "Facts" section of his amended complaint.  (ECF No. 112, PageID.1337; *see* ECF No. 16, PageID.177).  He states that "[t]he law does not require exhaustion of facts [or] evidence."  This concedes, as the amended complaint

25

suggests, that Lewis is not proceeding against Russell and Wallace on these claims. Thus, the Court should only consider what Lewis has laid out as Claims I-IV in the amended complaint as causes of action against Defendants, which has been outlined above.

Claim II, as discussed above, alleges that Ramsey and Campbell conspired with Wallace, Russell, and Luzius on October 28, 2019, to deny Lewis access to the courts by "violating [his incoming] and outgoing legal mail." (ECF No. 16, PageID.179). Specifically, he alleges that Defendants opened his outgoing legal mail regarding *Lewis v. Decker* and inserted falsified documents to discredit his claims or "denial of adequate research capability." (*Id.*). In the amended complaint, he references MRF-1622, which contains the same claim, though it does not reference the names of any responsible individuals. (ECF No. 33-3, PageID.391).

Campbell, Russell, and Wallace argue that they were not given adequate notice of Lewis's claims in this or any other grievance, as they are not named in any of Lewis's exhausted grievances at Step I. (ECF No. 74, PageID.957). Setting aside the question of whether any Defendant was put on notice by Lewis's reference to "the legal [department] and mailroom" at Step I, MDOC did not reject the grievance at Step I for failure to name the responsible individual(s). The grievance was addressed on the merits. (ECF No. 33-3, PageID.392). At Step II,

Lewis clarifies that Ramsey was responsible for opening his legal mail "in conjunction with Melody Russell," and names Campbell as a responsible party as well. (*Id.*, PageID.389). The grievance was again addressed on its merits at Step II, and denied (not rejected) at Step III. (*Id.*, PageID.388, 390).

This constitutes MDOC's clear waiver of the defense Defendants now present under *Reed-Bey v. Pramstaller*, 603 F.3d at 325. "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id*. There is "no benefit to enforcing a procedural bar that the Department of Corrections did not." *Id*. at 326. Therefore, the undersigned finds that this claim has been exhausted and should proceed on the merits against Campbell and Russell, who were named at Step II. As to Wallace, the claim is unexhausted and should be dismissed.

As to Claim III, Wallace and Russell are alleged to have conspired with Luzius to deny Lewis access to the courts in denying him library access for 60 days pursuant to his misconduct violation for creating a disturbance. (ECF No. 16, PageID.180). As discussed above, this claim in its entirety is unexhausted, as Lewis failed to raise the issue at hearing or in application for rehearing or appeal. Furthermore, Wallace and Russell were not named in any of the grievances against Luzius for this issue. Therefore, the claims against them are unexhausted.

27

Lastly, Lewis alleges in Claim IV that Wallace and Russell ordered mailroom personnel at DRF to withhold mailing his petition for rehearing in *Lewis v. Decker*, causing the motion to fail. (*Id*., PageID.182). As clarified in Lewis's affidavit of support, attached to the amended complaint, mailroom staff purposely withheld this critical, time-sensitive motion to the United States Supreme Court, which was fatal to the Court's review of his petition. (*Id*., PageID.200-201).

Campbell, Russell, and Wallace note that Lewis's petition for writ of certiorari before the United States Supreme Court was denied on December 7, 2020, and his petition for rehearing was received and denied by the Court on June 9, 2021. (ECF No. 67-4, PageID.896). According to Lewis's Step III grievance report, current as of October 20, 2021, no grievances that made it to Step III were filed after June 9, 2021. (ECF No. 33-3, PageID.365). Thus, this claim is unexhausted.

Lewis argues in his response that he attempted to exhaust this claim in a grievance, "21-4-1211," but that the grievance was denied, with MDOC claiming a lack of jurisdiction. (ECF No. 112, PageID.1337-1338). He states that the mailroom then refused to mail his request for a Step II appeal form on four occasions. (*Id*.). In his affidavit in support of the response, Lewis states that he followed this up with a "notarized letter of inquiry" to the DRF grievance coordinator, which states that he had discovered the mailroom had opened and read

his mail before refusing to send it.  (*Id*., PageID.1345, 1348-1349).  He notes that he attempted to grieve this issue as well, complaining that a letter to his therapist had been opened and read by mailroom staff.  (*Id*., PageID.1351).  However, grievance 21-4-1211 is not attached to Lewis's response.  "[T]o survive summary judgment, a prisoner must provide evidence from which a reasonable factfinder could infer that it would be impossible for him or her to obtain relief through the prison's grievance process." *Gebhardt v. Larson*, No. 2:20-CV-11742, 2022 WL 4138600, at *4 (E.D. Mich. Aug. 2, 2022), *report and recommendation adopted,* 2022 WL 4137812 (E.D. Mich. Sept. 12, 2022).  "The mere fact that a particular grievance or set of grievances were denied does not meet this burden if the prison officials were willing to provide relief where appropriate and were capable of doing so." *Id*.  It is true that "[a] prisoner need not exhaust remedies if they are not 'available.' " *Ross v. Blake*, 578 U.S. 632, 636 (2016).  But here, without more, Lewis has presented "no more than a 'scintilla' of evidence in his favor, [which] is thus insufficient to allow his claim to survive summary judgment." *Cretacci v. Hare*, No. 21-5786, 2022 WL 17176781, at *6 (6th Cir. Nov. 23, 2022) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252).

Lewis also argues, without legal support, that he is not required to "exhaust facts he specifies as evidence of the conspiracy he claims." (ECF No. 112, PageID.1333).  However, numerous courts have rejected § 1983 claims of

conspiracy from prisoners who failed to exhaust those claims in grievances or misconduct hearings. *See Ayotte*, 2016 WL 5027594, at *3 (finding that "a prisoner must raise the argument that a misconduct ticket was issued based retaliation or conspiracy during the first misconduct hearing in order to properly exhaust these claims"); *Coates v. Castilla*, No. 20-CV-11101, 2022 WL 2162926, at *4 (E.D. Mich. Jan. 20, 2022), *report and recommendation adopted,* 2022 WL 2161484 (E.D. Mich. June 15, 2022) ("[Plaintiff's] argument that he properly exhausted his claims against Castilla also fails because the PREA grievance did not include allegations of retaliation or conspiracy"); *Johnson v. Bryant*, No. 1:17-CV-853, 2018 WL 3105945, at *1 (W.D. Mich. June 25, 2018) (finding that the plaintiff's conspiracy claims were not exhausted where grievance only stated that he was retaliated against for writing grievances). The Court is unaware of any authority suggesting that conspiracy claims need not be exhausted for prisoner suits under § 1983. Therefore, the only claim at issue that was properly exhausted is that Russell, Campbell, and unknown mailroom staff conspired to open and alter his legal mail relating to *Lewis v. Decker* on October 28, 2019, which was exhausted by MRF-1622.

  C.  Failure to State a Claim Against Campbell, Russell, and Wallace

  Campbell, Russell, and Wallace also contend that Lewis's complaint against them should be dismissed, for reasons stated in their previous opposition to

Lewis's amended complaint being adopted by the Court.  (ECF No. 74, PageID.954 (citing (ECF No. 67, PageID.863-870)).  In allowing the amended complaint to become operative, the undersigned found that Defendants' arguments would be addressed in the context of their motion to dismiss, and will be considered now.

Campbell, Russell, and Wallace first argue that dismissal of Lewis's claims against them is mandated by the law of the case, specifically the district court's decision, (ECF No. 7), dismissing similar claims from the original complaint.  The district court found that Lewis's claim regarding interference with his legal mail in September and October 2019, including a conspiracy claim with an unknown legal advisor, survived screening of the complaint.  (ECF No. 7, PageID.119-120).  The district court also found, however, that Lewis's access-to-the-courts claim for delaying his outgoing mail, regarding unknown mailroom clerk at DRF, Russell, and Wallace, failed to state a claim.  The district court explained:

> Lewis' prior action [in *Lewis v. Decker*] was dismissed on exhaustion grounds. He appealed, and the Sixth Circuit affirmed. *Lewis v. Decker*, No. 19-2162 (6th Cir. July 14, 2020).  Lewis filed a petition for writ of certiorari, but it too was denied. *Lewis v. Decker*, No. 20-5817 (Dec. 7, 2020).  The claim is that these three Defendants conspired to delay the filing of Lewis' motion for reconsideration of the denial of certiorari.  Stemming from an exhaustion dismissal of a prisoner civil rights action, however, the odds of such a motion being granted were de minimis.  Lewis does not plead facts showing that these Defendants hampered his efforts to pursue a nonfrivolous legal claim.  The Supreme Court is not an error-correction court, and Lewis does not explain what extraordinary feature of his case merited the Supreme

31

Court's attention. *See Shehee v. Grimes*, 39 F. App'x 127 (6th Cir. 2002) (Plaintiff did not suffer injury where underlying petition for certiorari was frivolous); *see also Fawley v. Geo Group, Inc.*, 2013 U.S. Dist. LEXIS 168306, *75 (D.N.M. Mar. 18, 2013) (Plaintiff not denied meaningful access to court where petitions for certiorari are "rarely" granted based on asserted misapplication of a properly stated rule of law). The complaint will be summarily dismissed with respect to these three Defendants for Lewis' failure to state a claim.

(*Id.*, PageID.126-127).

The law-of-the-case doctrine "provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016) (citation and internal quotation marks omitted). Lewis claims that his amended complaint "simply cured any deficiencies in stating a claim" as to this issue. (ECF No. 112, PageID.1333). But comparing the allegations in the original complaint that were dismissed (Claim Eight) with those of the amended complaint (Claim IV) reveals that the allegations are nearly identical and differ in no substantive way. (*Compare* ECF No. 1, PageID.28-29; ECF No. 16, PageID.182-184). And review of Lewis's "affidavit of support" regarding Claim IV offers no additional reason to reconsider this claim. *See* ECF No. 16, PageID.200-201. Lewis's hurdle here, that his petition for rehearing to the United States Supreme Court was so unlikely to be granted that its delay did not constitute "actual injury," *Lewis v. Casey*, 518 U.S. 343, 349, 351-353 (1996), remains fatal to his claim. Therefore, while this claim was already found to be unexhausted because Lewis did not fully pursue the

available administrative remedies before bringing suit, it also fails to state a claim as the district court explained in screening the complaint.

Finally, regarding Claim II, which the undersigned finds exhausted as to Russell and Campbell, Defendants argue that it fails to state a valid conspiracy claim under § 1983. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). To state a claim for civil conspiracy, a plaintiff must allege facts that, "when accepted as true, would allow a juror to find that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020). "Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.' " *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). "In other words, plaintiffs bringing a conspiracy claim shoulder a heavy burden at the pleading stage." *In re Flint Water Cases.*, No. 20-12726, 2022 WL 957542, at *10 (E.D. Mich. Mar. 29, 2022), *appeal dismissed sub nom. In re Flint Water Cases*, No. 22-1385, 2022 WL

33

16580178 (6th Cir. Aug. 23, 2022).

Here, Lewis alleges that Defendants must have conspired with mailroom personnel to open and alter his legal mail because "mailroom personnel had no independent knowledge of Mr. Lewis' suit in *Lewis v. Jon Decker et al.*" and "were not acting as [rogue] employees." (ECF No. 16, PageID.189). "They got their knowledge and orders from . . . Melody Wallace and Russell." (*Id.*, PageID.190). He states that "Ramsey and Campbell willingly join in conspiracy with Wallace and Russell to defeat prisoners suits against corrections by employing many tactics such as holding up time-sensitive whether outgoing or incoming legal mail." (*Id.*). He then asserts that "[d]iscovery will show . . . Melody Wallace and Richard Russell are the conductors of these conspiracies. Employees such as Ramsey and Campbell would not act independently simply because they'd be unemployed if they did. Further, they could not know which inmates were suing corrections; they were informed and instructed to act." (*Id.*, PageID.191).

These claims do not set out facts, but rather conclusory allegations and conjecture, in order to make out a conspiracy claim against Russell, Wallace, and Campbell. Vague and conclusory allegations are insufficient to state a civil rights claim against prison officials under § 1983. *See Baytops v. Morrison*, No. 2:20-CV-12786, 2020 WL 6316812, at *3 (E.D. Mich. Oct. 28, 2020); *Yoder v.*

34

*Stevenson*, No. 2:20-CV-12992, 2021 WL 120936, at *3 (E.D. Mich. Jan. 13,

2021).

In *Quigley v. Abel*, No. 2:20-CV-5146, 2020 WL 6390163, at *6 (S.D. Ohio

Nov. 2, 2020), *report and recommendation adopted,* 2020 WL 7230016 (S.D.

Ohio Dec. 8, 2020), the court rejected a plaintiff's conspiracy claims for similar

reasons:

> Although his Complaint repeatedly refers to the existence of a
> conspiracy, Plaintiff has not met the basic requirements of pleading a
> conspiracy sufficient to subject the Nationwide Defendants to liability
> under § 1983. There are no facts in the complaint suggesting that a
> single plan existed here. For example, Plaintiff does not detail how he
> discovered this alleged conspiracy. Similarly, he does not describe any
> overheard conversations or discovered correspondence between the
> defendants that support his conclusory allegations. Further, no facts
> suggest that the parties had an objective to deprive Plaintiff of his
> constitutional rights. In short, Plaintiff has not demonstrated anything
> aside from speculation and conjecture arising from his subjective belief
> that the Nationwide Defendants conspired together to deprive him of
> his constitutional rights.

The same is true here. Beyond motive, Lewis has not alleged with any degree of

specificity a plausible complaint for conspiracy. Even regarding motive, it is

unclear why this set of Defendants, and not others, would have been behind the

conspiracy. Lewis has merely alleged that these Defendants may have had the

*means* to affect his legal mail, and even the veracity of this claim is questionable.

Further, while Lewis seeks to unearth evidence of this conspiracy through

discovery, the inadequacy of his pleadings "is not an issue that the Court can

overlook in the hopes that later discovery will fill in more details." *In re Flint Water Cases.*, 2022 WL 957542, at *12. As such, Lewis's remaining claims against Campbell, Russell, and Wallace should be dismissed for failure to state a claim.

V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Lewis's motion to strike be DENIED. The undersigned further RECOMMENDS that Defendants' dispositive motions (ECF Nos. 33, 74) be GRANTED, and that Lewis' claims against Luzius, Campbell, Russell, and Wallace be DISMISSED. Claim II should be DISMISSED as to Campbell, Russell, and Wallace WITH PREJUDICE; all other claims as to Campbell, Russell, Wallace, (Claims III and IV) and Luzius (Claims II-IV) should be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies. If this recommendation is adopted, Lewis's claims would proceed against the following Defendants: Alan Greason, Regina Jenkins-Grant, Unknown Mailroom Personnel, and Unknown Transfer Coordinator (identified by Defendants as Jennifer Torres, ECF No. 74, PageID.951).

Dated: February 15, 2023                    s/Kimberly G. Altman
Detroit, Michigan                           KIMBERLY G. ALTMAN
                                            United States Magistrate Judge

36

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 15, 2023.


s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager