UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOM LEWIS,

      Plaintiff,

v.

ALAN GREASON, REGINA JENKINS-
GRANT, and JENNIFER TORRES,

      Defendants.

_____/

Case No. 2:21-cv-11939
District Judge Nancy G. Edmunds
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
## (ECF No. 134)
## AND
## TO DENY PLAINTIFF'S MOTION TO AMEND THE COMPLAINT
## (ECF No. 150) [1]

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Tom Lewis (Lewis), proceeding *pro se*, filed a complaint against nineteen defendants located at three different correctional facilities. (ECF No. 1). Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 21).

---

[1] Upon review of the parties' papers, the undersigned deemed this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

Following an order of partial dismissal, (ECF No. 7), adoption of Lewis's amended complaint, (ECF Nos. 16, 78), and an order adopting the undersigned's Report and Recommendation to dismiss and/or grant summary judgment to several defendants, (ECF No. 129), only Lewis's claims against assistant warden Alan Greason (Greason), unit manager Regina Jenkins-Grant (Jenkins-Grant), and transfer coordinator Jennifer Torres (Torres) remain.  Those defendants have now moved to dismiss the amended complaint for failure to state a claim, and in the alternative, for summary judgment on the basis of exhaustion.  (ECF No. 134). The motion is fully briefed.  (ECF Nos. 143, 144).  Additionally, since the filing of that motion, Lewis has moved for leave to amend the complaint.  (ECF No. 150).[2]

For the reasons stated below, it is RECOMMENDED that defendants' motion, (ECF No. 134), be GRANTED, and that Lewis's motion to amend, (ECF No. 150), be DENIED.  If the undersigned's recommendation is adopted, Lewis will have no remaining claims against any defendants, and this case will be closed.

## II.    Background

The following facts are gleaned from the amended complaint and are presumed true on a motion to dismiss.

---

[2] Lewis has also moved for clarification of the scheduling order, (ECF No. 139), for discovery in order to respond to defendants' motion, (ECF No. 141), to subpoena court and corrections records, (ECF No. 146), to re-add defendants Wallace and Russell to the complaint, (ECF No. 147).  These motions are the subject of a separate order.

Lewis alleges that Greason, Jenkins-Grant, and Torres subjected him to a retaliatory and discriminatory transfer from Macomb Correctional Facility (MRF) to Gus Harrison Correctional Facility (ARF), where Kosher meals were unavailable. (ECF No. 16, PageID.173, 178). In his attached affidavit, he clarifies that this transfer was in retaliation for a grievance he filed against other officers, and that the fight that was the stated reason for transfer was not serious enough to require one. (*Id.*, PageID.187). Lewis grieved the issue, and in response defendants claimed that his Kosher diet was overlooked when he was transferred to ARF. (*Id.*, PageID.188). He was then transferred to the Carson City Correctional Facility (DRF) in an attempt to remedy the lack of Kosher meals at ARF, but DRF was also unable to accommodate Lewis's diet for three-to-four months. (*Id.*). Lewis states that if the transfer had not been retaliatory, he would simply have been returned to MRF upon defendants' realization of their mistake. (*Id.*, PageID.189).

### III.     Standards of Review

#### A.     Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Lewis is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020)

(quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

### B. Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .   [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich.

2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

IV.   Analysis

A.   Exhaustion of Administrative Remedies

1.   Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly"

exhaust all "available" administrative remedies before filing a lawsuit challenging

prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93

(2006). Proper exhaustion of administrative remedies "means using all steps that

the agency holds out, and doing so *properly* (so that the agency addresses the

issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal

quotation marks and citations omitted). Requiring exhaustion allows prison

officials an opportunity to resolve disputes concerning the exercise of their

6

responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The Michigan Department of Corrections (MDOC) has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper

7

exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ S (underlining omitted).

### 2. Lewis's Grievance

Lewis submitted one grievance through Step III that is relevant to his claims against Greason, Jenkins-Grant, and Torres:

<u>MRF-19-11-1621-24z (MRF-1621)</u>

In MRF-1621, Lewis grieved that he was retaliated against and transferred to ARF, a facility that did not provide Kosher meals to accommodate his religious

diet, on October 19, 2019.  (ECF No. 33-3, PageID.386).  Lewis alleged that the transfer was retaliation for filing other grievances and for filing suit against other MDOC officials in *Lewis v. Decker*, Case No. 1:18-cv-1093 (W.D. Mich.).  (*Id*.).

At Step I, the MDOC found that his transfer was due to receiving a fighting ticket.  (*Id*., PageID.387).  The MDOC admitted that his Kosher dietary needs were overlooked, but that Lewis had since been transferred to DRF, "where he can participate in his diet lines."  (*Id*.).

At Step II, Lewis complained that the proffered reason for his transfer could be "discredited easily" by the fact that his fight was a "minor [scuffle]" and that he did not start the fight.  (*Id*., PageID.384).  He also complained that his dietary requirements were well-known by staff and that the "ADW who ordered my transfer knows [him] personally for years."  (*Id*.).  He did not complain that he was transferred to DRF, which also lacked Kosher meals at that time according to the amended complaint.

In its Step II response, the MDOC explained that the grievance was "considered resolved" by Lewis's subsequent transfer to DRF, which could accommodate his Kosher diet.  (*Id*., PageID.385).

At Step III, Lewis stated that "[a] series of fight tickets during discovery will prove the lying nature of response[.]"  (*Id*., PageID.384).  He again made no mention of the transfer to DRF or that facility's lack of Kosher meals.  The MDOC

9

upheld its decision at Step III.  (*Id*., PageID.383).

### 3.    Exhaustion

Greason, Jenkins-Grant, and Torres argue that because Lewis did not name them personally in his grievance, he has failed to exhaust his claims against them through the MDOC's grievance process.  (ECF No. 134, PageID.1610-1611 (citing *Reed-Bey v. Pramstaller*, 603 F.3d at 324)).  They "adopt by reference" the arguments made in ECF Nos. 33 and 74, dispositive motions from the other defendants in the case, on this point.  (*Id*.).  However, in the undersigned's Report and Recommendation (R&R) on this issue regarding those dispositive motions, she explained that the MDOC's failure to reject a grievance for not naming the responsible individual(s) constitutes "clear waiver of the defense Defendants now present under *Reed-Bey v. Pramstaller*, 603 F.3d at 325."  (ECF No. 114, PageID.1386).  "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we."  *Reed-Bey v. Pramstaller*, 603 F.3d at 325.

Lewis named no responsible parties in his Step I grievance.  By nevertheless ruling on its merits rather than rejecting the grievance on this or other procedural grounds, the MDOC has waived the right to assert this defense now.  Lewis has therefore exhausted his administrative remedies regarding *his transfer from MRF to ARF*.

This grievance, however, does not exhaust the claims that *Lewis's transfer from ARF to DRF was retaliatory or violated his right to free exercise*. Neither this nor any other grievance filed at MRF covers the ARF-to-DRF transfer or asserts that Greason, Jenkins-Grant, or Torres were responsible for it.[3]

In *Heard v. Strange*, No. 2:17-CV-13904, 2019 WL 2385205, at *5 fn.5 (E.D. Mich. May 10, 2019), *report and recommendation adopted*, No. 17-13904, 2019 WL 2355176 (E.D. Mich. June 4, 2019), the court considered exhaustion where, as here, two transfers are at issue. In *Heard*, the plaintiff argued that "his two transfers [were] inseparable." *Id*. The court disagreed, explaining that "even if both transfers were retaliation[,]" "they are two distinct alleged acts: separated by six months in time, different in kind (intra-versus inter-prison transfer), and implicating different defendants (for example, defendants Strange and Shannon were allegedly involved in only Plaintiff's prison transfer, not his housing unit transfer[.]" Thus, each transfer required exhaustion.

As in *Heard*, Lewis's two transfers were two distinct alleged acts that would each, separately, require exhaustion. *See also Siggers v. Campbell*, 652 F.3d 681, 691-93 (6th Cir. 2015) (finding plaintiff "was not suffering from one, continuing

---

[3] Defendants note that Lewis continued to file MRF grievances while incarcerated at DRF in 2019, showing that Lewis could have grieved that his transfer to DRF was somehow caused by Greason, Jenkins-Grant, and/or Torres, but did not. (ECF No. 134, PageID.1609 (citing ECF No. 33-3, PageID.383–392)).

harm and government indifference" where prison staff rejected his mail on multiple occasions; each rejection was a "discrete event" involving "separate facts and circumstances," and he needed to file separate grievances for each).

In sum, Lewis's claims against Greason, Jenkins-Grant, and Torres regarding his transfer from ARF to DRF are not exhausted and should be dismissed without prejudice.  His claim regarding his initial transfer from MRF to ARF, has been exhausted.  However, as explained below, it fails to state a viable claim.

## B.    Failure to State a Claim

Greason, Jenkins-Grant, and Torres argue that Lewis has failed to state a claim against them in the amended complaint.  Lewis alleges that his transfer from MRF to ARF was retaliatory, violating his right to free speech under the First Amendment based on his grievance filing, and that his transfers to ARF and then to DRF violated his right to free exercise under the same.  Defendants argue that Lewis's denial of Kosher meals was *de minimis* and therefore does not support either constitutional claim, i.e. free exercise or retaliation.

### 1.    Free Exercise

"Inmates retain First Amendment protections while incarcerated, including their right to the free exercise of their religion." *Jackson v. Risner*, No. 15-6317, 2017 WL 5712672, at *2 (6th Cir. May 15, 2017) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)).  "Those rights are necessarily limited by the fact of

incarceration and may be restricted in order to maintain prison security or to serve other penological goals. *Id.* (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). "[P]rison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). "For the inmate, this is essentially a constitutional right not to eat the offending food item. If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander*, 31 F. App'x at 179.

Defendants argue that Lewis was, at worst, negligently transferred to ARF, a facility without Kosher meals, and when this mistake was discovered, transferred to DRF which had Kosher meals. Thus, they argue, Lewis's time without Kosher meals lasted for little over a week and was therefore *de minimis*. (ECF No. 134, PageID.1605). They do not address Lewis's claim that DRF did not have a Kosher kitchen for three-to-four months after his arrival to the facility, thereby denying his religious dietary needs for that length of time as well. (ECF No. 16, PageID.189). However, as discussed above, this claim was not exhausted. Furthermore, as employees stationed at MRF, it is unclear how defendants would have been responsible for Lewis's transfer from ARF to DRF, and it is not specifically alleged that they were. Reading the complaint in the light most favorable to Lewis,

this transfer was the mistake of ARF and/or DRF employees, and cannot be plausibly traced to Greason, Jenkins-Grant, or Torres.

Defendants argue that Lewis fails to state a claim because "isolated incidents of negligence by prison officials in implementing Kosher food requirements [are] not actionable under the First Amendment."  (ECF No. 134, PageID.1605 (citing *Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010))).  However, this ignores the thrust of Lewis's allegations, which is that the transfer to a facility without Kosher meals was made knowingly.  At this stage, the allegations of the operative complaint must be taken as true.  Nevertheless, Lewis has not alleged a claim that sounds under the Free Exercise Clause of the First Amendment.

"While Defendants must provide meals that do not violate Plaintiff's sincerely held religious dietary requirements, 'an isolated incident that impacts a prisoner's right to exercise his religion does not violate the First Amendment.' " *Nour v. Davidson Cnty. Sheriff's Off.*, No. 3:21-CV-00189, 2021 WL 2827095, at *3 (M.D. Tenn. July 6, 2021) (citing *Lopiccolo v. Michigan Dep't of Corr.*, No. 2:20-12178, 2020 WL 5291961, at *2 (E.D. Mich. Sept. 4, 2020)) (internal footnote omitted).  *See also Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) ("De minimis burdens on the free exercise of religion are not of constitutional dimension. . . .  Thus, the prison officials' failure to accommodate [the defendant's] standing request for non-pork meals on three isolated occasions

14

does not give rise to liability for a constitutional violation.").

Courts in this district have consistently found that denial of religious meals for a few days is *de minimis* or otherwise does not rise to the level required to sustain a constitutional claim.  *See Greenberg v. Hill*, No. CIV.A. 2:07-CV-1076, 2009 WL 890521 (S.D. Ohio Mar. 31, 2009) (a Jewish inmate denied a full Seder meal on two occasions did not have a free exercise claim); *Bennett v. Burt*, No. 1:16-CV-1203, 2016 WL 7034240, at *7 (W.D. Mich. Dec. 2, 2016) (an inmate's loss of four days of work due to the Sabbath was *de minimis*); *Crump v. Best*, No. 09-14323, 2010 WL 940037 (E.D. Mich. Feb. 4, 2010), *report and recommendation adopted in part*, 2010 WL 939983 (E.D. Mich. Mar. 12, 2010) (an inmate who was prevented from properly fasting during Ramadan, but whose issue was remedied "within days," suffered no more than *de minimis* burden on his practice of religion); *Resch v. Rink*, No. 2:21-CV-227, 2022 WL 794849, at *4 (W.D. Mich. Mar. 16, 2022) (denial of Passover meals for three days was not actionable).

Furthermore, in *Jackson v. Risner*, the Sixth Circuit affirmed the district court's grant of summary judgment in favor of the defendants where the plaintiff was denied Kosher meals from late April until mid-May of the same year, because "the defendants could reasonably have believed that it was permissible to deny [the plaintiff's] kosher meals for the limited time it would take to complete [his]

15

transfer from GRCC to a DOC facility equipped to provide kosher meals." 2017 WL 5712672, at *3. Similarly, in *Horacek v. Martin*, No. 2:15-CV-102, 2022 WL 18587785, at *7 (W.D. Mich. Aug. 9, 2022), *report and recommendation adopted*, 2023 WL 333977 (W.D. Mich. Jan. 20, 2023), a district court determined that a three-month administrative delay in placing the plaintiff in the Kosher meal program did not rise to the level of a free exercise claim.

Here, because Lewis was transferred from ARF to DRF within days of complaining about the lack of Kosher meals at ARF, and because his claims regarding Kosher meal availability at DRF are not exhausted or attributable to the named defendants, he cannot sustain a free exercise claim. His lack of Kosher meals for the short time that he was incarcerated at ARF did not rise to the level of a constitutional violation. Thus, his claim that his transfers to facilities without Kosher kitchens violated his right to free exercise should be dismissed for failure to state a claim.

2.    Retaliatory Transfer

Lewis also argues that his transfers to ARF and then to DRF were retaliatory for his grievance and lawsuit filing while at MRF. His arguments regarding the transfer to ARF are analyzed below. As noted above, his transfer from ARF to DRF is not attributable to the named defendants and is unexhausted. Additionally, this transfer was not a foreseeable consequence of his transfer to ARF.

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, —— U.S. ——, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  Thus, to the extent Lewis brings a claim based on Greason's grievance decisions, those claims should be dismissed.  But inmates have the " 'undisputed First Amendment right to file grievances against prison officials on [their] own behalf.' " *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).  Filing grievances qualifies as protected conduct and satisfies the first element of Lewis's retaliation

17

claim.

Defendants focus on the second element: whether Lewis's transfer to ARF was an adverse action that would deter a person of ordinary firmness from continuing to file grievances and/or lawsuits.

The Sixth Circuit has observed that, "since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005). *See also Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001) ("A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights."); *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983) ("an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State"); *Meachum v. Fano,* 427 U.S. 215, 228 (1976) ("[w]hatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.").

For a retaliatory transfer to be an adverse action, it must give rise to "foreseeable consequences" that would deter the protected conduct. *Siggers-El v. Barlow*, 412 F.3d at 702. "Only those consequences that inextricably follow from

18

a defendant's alleged retaliatory conduct (a transfer from filling out a transfer screen, for instance) would be considered in determining whether the plaintiff suffered an adverse action." *Id*.  The Sixth Circuit has recognized certain situations where transfers can constitute adverse actions, such as where the consequences from a transfer affect an inmate's access to the courts, *id*., or result in an increased security level, *King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005).  Other consequences, such as loss of employment, *Dykes-Bey v. McRoberts*, No. 16-1228, 2016 WL 11618608 (6th Cir. Sept. 13, 2016); increased distance from visitors, *Johnson v. Hoffner*, No. 17-2102, 2018 WL 4488737, at *3 (6th Cir. Apr. 20, 2018); *Smith v. Weers*, No. 17-1504, 2018 WL 2087122, at *4 (6th Cir. Jan. 2, 2018); or where the inmate's new facility was allegedly inferior to their former one, *Hudson v. Wade*, 2014 U.S. App. LEXIS 25160 (6th Cir. Mar. 5, 2014) (where new facility provided less law library access, housed mentally ill prisoners, had a documented racist history, required prisoners to make calls outside in cold weather, and was known for elevating minor rule violations to major misconducts), do not rise to the level of adverse actions for retaliation claims.

In *Colvin v. Foy*, No. 1:13-CV-465, 2014 WL 1154658, at *6 (W.D. Mich. Mar. 21, 2014), *aff'd,* 2015 WL 13927277 (6th Cir. June 18, 2015), the plaintiff-inmate complained that he was transferred to a facility in retaliation for filing a grievance, and that the defendant "failed to make a notation on Plaintiff's transfer

19

order indicating that Plaintiff was currently receiving a Kosher diet[,]" which "resulted in an unnecessary delay" in receiving Kosher meals.  The court found that despite a short and potentially avoidable delay in the plaintiff receiving a Kosher diet, the plaintiff had "failed to demonstrate that there were foreseeable consequences to his transfer which were so adverse and exceptional as to transform a routine transfer into a retaliatory action." *Colvin v. Foy* at *10.

While a transfer that resulted in a permanent loss of Kosher meals for Lewis would likely constitute an adverse action, a temporary loss of meals for a matter of days does not.  Although Lewis argues that he was actually deprived of a Kosher diet for three or four months after his second transfer from ARF to DRF, this was not a foreseeable consequence of his transfer from MRF to ARF.  Further, as discussed above, the second transfer is unexhausted and not attributable to the remaining defendants in this case.  As such, Lewis cannot sustain a First Amendment retaliation claim against these defendants, because his lack of Kosher meals for a short time at ARF would not have deterred a prisoner of ordinary firmness from continuing to engage in filing grievances or lawsuits.[4]

### C.    Lewis's Motion to Amend

---

[4] Indeed, it did not dissuade Lewis from filing grievances, (ECF No. 33-3, PageID.383-392), or from filing this lawsuit against the defendants he had previously grieved, as well as those responsible for his transfer.  Lewis also made filings in *Lewis v. Decker, supra*, after his transfer.  (ECF No. 67-3, PageID.889).

While defendants' motion was pending, Lewis moved to amend the complaint, seeking to keep his claims against Greason, Jenkins-Grant, and Torres and reassert his already-dismissed fraud and conspiracy claims and his denial of law library access claim against Christine Ramsey (Ramsey), Ellen Campbell (Campbell), Melody Wallace (Wallace), Richard Russell (Russell), and Jeffery Luzius (Luzius).  (ECF No. 150).  As the remaining defendants note in their response, these reasserted claims all center around Lewis's earlier denial-of-medical-care lawsuit in *Lewis v. Decker*, W.D. Mich. No. 1:18-cv-1093, which Lewis appealed to the Sixth Circuit and to the U.S. Supreme Court for certiorari.

Substantially the same claims as asserted in the proposed amended complaint have already been considered and decided by this Court.  Specifically, the undersigned recommended dismissal of the conspiracy and fraud claims against Russell, Wallace, and Campbell because they were based on "conclusory allegations and conjecture."  (ECF No. 114, PageID.1393).  Such allegations are not sufficient to state a § 1983 claim.  *See, e.g.*, *Baytops v. Morrison*, No. 2:20-CV-12786, 2020 WL 6316812, at *3 (E.D. Mich. Oct. 28, 2020); *Yoder v. Stevenson*, No. 2:20-CV-12992, 2021 WL 120936, at *3 (E.D. Mich. Jan. 13, 2021).  That R&R was adopted by order, resulting in dismissal of those claims. (ECF No. 129).  Lewis's proposed allegations do not add the specificity or particularity required to reassert his civil conspiracy or fraud claims.

As to Lewis's law library access claims, the undersigned recommended their dismissal without prejudice due to Lewis's failure to exhaust administrative remedies before filing suit.  This recommendation was also adopted.  Lewis has made no indication that his similar claims in the proposed amended complaint are somehow, now, exhausted.  Thus, the undersigned recommends that Lewis's motion to amend the complaint, (ECF No. 150), be denied as futile.  *See Spingo v. Precision Pipeline, LLC*, 59 F. Supp. 3d 831, 834 (E.D. Mich. 2014) ("[L]eave [to file an amended complaint] may be denied on the basis of . . . futility of the proposed new claim").

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motion, (ECF No. 134), be GRANTED, and that Lewis's motion to amend, (ECF No. 150), be DENIED.

Specifically, Lewis's claims regarding his first transfer from MRF to ARF are exhausted, but fail to state a claim and should be DISMISSED WITH PREJUDICE.  Lewis's claims regarding his second transfer from ARF to DRF are unexhausted and not attributable to the named defendants and should be DISMISSED WITHOUT PREJUDICE.

If this recommendation is adopted, Lewis will have no remaining claims against any defendants, and the case should be closed.

Dated: July 20, 2023                          s/Kimberly G. Altman
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                              United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

23

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 20, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager